UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHELITA DEGRUY-HAMPTON | CASE NO. |
| versus | |
| | JUDGE |
| OCHSNER CLINIC, A PROFESSIONAL CORPORATION | |
| | MAGISTRATE |

*************************************************************************

# COMPLAINT

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Shelita DeGruy-Hampton ("Mrs. Hampton"). As alleged with greater particularity below, the Defendant, Ochsner Clinic a Professional Corporation ("Ochsner"), terminated Ms. Hampton because of her disability.

This is also an action under Title XXIX of the Family and Medical Leave Act of 1993, (29 U.S.C. § 2615 ("FMLA").

JURISDICTION & VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, § 1331, § 1337, §1343, and § 1345. This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C § 12117(a), which incorporates by reference Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and 29 U.S.C. § 2617.

1

2. The employment practices alleged to be unlawful were committed in the State of Louisiana and, therefore, within the jurisdiction and venue of the United States District Court for the Eastern District of Louisiana pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3. The plaintiff, Shelita DeGruy-Hampton, is a person of the age of majority and a resident of the Eastern District of Louisiana.

4. At all relevant times, Ochsner has continuously been a Louisiana corporation doing business in New Orleans, Louisiana, and has continuously has at least 15 employees

5. At all relevant times, Ochsner has continuously been an employer engaged in an industry affecting commerce under the ADA, 42 U.S.C. § 12111(5) and (7).

6. At all relevant times, Ochsner has been a covered entity under ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than 30 days prior to the institution of this action, Ms. Hampton filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA by Ochsner.

8. The EEOC transferred the investigation of this matter to the Louisiana Commission on Human Rights ("LCHR").

9. On July 22, 2020, LCHR issued a right to sue letter.

## STATEMENT OF CLAIMS

10. On or about February 18, 2019, Ochsner engaged in unlawful employment practices in violation of ADA, 42 U.S.C. § 12112(a) and (b) and in violation of FMLA, 29 U.S.C. § 2615.

11. Ms. Hampton is a qualified individual with a disability under the ADA, 42 U.S.C. § 12102 and § 12111(8) and under 29. U.S.C. § 2611(2)(a).

    A. Ms. Hampton has an impairment, Multiple Sclerosis ("MS"), that substantially limits one or more major life activities, including but not limited to, memory, fatigue, pain in extremities and dizziness. As a result of her impairment, Ms. Hampton made use of her rights under the FMLA.

    B. Ochsner subjected Ms. Hampton to an adverse employment action, termination, because of her actual or perceived impairment, MS and her use of FMLA.

    C. Ms. Hampton was at all relevant times able to perform the essential functions of her position with or without reasonable accommodations.

12. Ochsner subjected Ms. Hampton to an adverse employment action, termination, on the basis of her disability and use of her FMLA.

    A. Ochsner employed Ms. Hampton from February 25, 2013 to March 1, 2019 as a Scrub Technician.

    B. As a Scrub Technician, Ms. Hampton assisted in surgery by handing the surgeons various instruments requested during surgery.

    C. Ms. Hampton was diagnosed with MS in February of 2015.

    D. Ochsner was made aware of Ms. Hampton's diagnosis.

    E. After being diagnosed with MS, Ms. Hampton began to make use of FMLA leave.

3

13. On or about September 7, 2018, Ms. Hampton was placed on progressive discipline by Ochsner and received a write-up for being non-responsive while on call.

14. On or about February 18, 2019, received a second disciplinary action for failing to comply with Ochsner's flu policy. However, the allegedly violation of Ochsner's flu policy occurred in December of 2018 but she was not written up until February 18, 2019.

15. Sometime before the February 18, 2019 write up for violation of the flu policy, Ms. Hampton had a meeting with Iesha Collins for her yearly evaluation. During this meeting, Ms. Collins informed Ms. Hampton that she was performing at the standard expected of someone in her position. Ms. Hampton specifically asked Ms. Collins if her Basic Life Support[1] ("BLS") certification was set to expire anytime soon. Ms. Collins informed Ms. Hampton that if her BLS certification was due to expire it would have popped up on the screen so that Ms. Collins could notify Ms. Hampton of the expiration date. Ms. Collins told Ms. Hampton, that she did not see any indication that her BLS certification was set to expire.

16. On or about February 25, 2019, Ms. Collins informed Ms. Hampton that her BLS certification was set to expire on February 28, 2019. Ms. Collins assured Ms. Hampton that she would be able to receive the training necessary to update her certification before the February 28, 2019 due date.

17. Ms. Collins instructed Ms. Hampton to report to her assigned surgery room and that she would send someone to relieve Ms. Hampton so that she could complete the BLS

---

[1] Basic Life Support Certification consist of CPR training.

4

training. The BLS training consisted of an online class and a hands-on portion, wherein, the trainee is required to perform CPR on a mannequin.

18. Ms. Hampton was assisting with a surgical procedure. Ms. Hampton was never relieved from the procedure and therefore was unable to complete the training on or about February 25, 2019.

19. On or about February 26, 2019, Ms. Hampton was again instructed to report to the surgery room where she was assigned and told that relief would be sent so that she could receive her BLS training. At some point while in the surgery procedure, Ms. Hampton asked one of the nurses in the room to call the front desk to see if and when her relief was coming. The front desk, through the nurse in the room, informed Ms. Hampton that someone would be there to relieve her. Ms. Hampton's relief never came.

20. On or about February 27, 2019, Denise Johnson, a Scrub Technician and coordinator, informed Ms. Hampton that she should report to her assigned surgery room and that Ms. Johnson would come to relieve her so that she could receive her BLS training. Ms. After being in the surgery room for some time, Ms. Hampton again had the nurse call the front desk to inquire about her relief. The nurse was instructed that relief was on the way.

21. When Ms. Hampton relief arrived, Ms. Hampton was informed that her relief was for her customary 10-minute break. Ms. Hampton went into the break room and saw Ms. Collins and Ms. Johnson on break. Ms. Hampton asked Ms. Johnson why she never came to relieve her so that she could undergo her BLS training. Ms. Johnson informed Ms. Hampton that she was instructed not to relieve Ms. Hampton.

22. Ms. Hampton went to speak with Tracy Tremaine, her supervisor, to inform her of the difficulties she was having getting relieved from surgery so that she could receive the BLS training. Ms. Tremaine assured Ms. Hampton that she would make sure that she was able to receive the training on February 28, 2019.

23. When Ms. Hampton reported to work on February 28, 2019, she was not assigned to a surgery procedure. Instead, she was instructed to report to the classroom to complete the online portion of her training. After completing the online portion of the BLS training and receiving her certificate, Ms. Hampton presented the certificate to Ms. Tremaine. Ms. Tremaine told Ms. Hampton that she would have to complete the hands-on portion of her training on March 1, 2019 because there were no more times available on February 28th for her to complete the training.

24. On or about March 1, 2019, Ms. Hampton reported to work and was instructed to go to the location where she would receive her hands-on BLS training. Ms. Hampton went and completed the hands-on portion of the BLS training and received her certificate. After completing the training, Ms. Hampton was assigned to a surgery room to assist with a procedure. At on around 4:30pm, Ms. Hampton was relieved from that procedure and was told to report to the office.

25. When Ms. Hampton reported to the office Ms. Tremaine and another woman were present and it was at this time Ms. Hampton was informed that she was being written up because she failed to timely renew her BLS certification. She was also told that since this write-up was a third write up within in a 12-month period she was being terminated.

26. Ms. Hampton was unaware of the second write up for violation of the flu policy until the meeting on March 1, 2019 when she was terminated.

27. Ochsner failed to follow the guidelines of its own progressive discipline process when it wrote Ms. Hampton up for her allegedly violating its flu policy because Ochsner failed to write Ms. Hampton up at the time of the violation and did not inform her of the violation until her termination.

28. The effect of Ochsner's unlawful employment practices complained above has been to deprive Ms. Hampton of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability in violation of the ADA and because of her use of FMLA.

29. The unlawful employment practices complained of above were intentional. Any allegation of violations of Ochsner's policies was a pretext to terminate Ms. Hampton for what Ochsner perceived as her excessive use of FMLA.

30. Ochsner acted with malice and/or reckless indifference to the federally protected rights of Ms. Hampton when it engaged in the unlawful employment practices complained of above.

## PRAYER FOR RELIEF

Wherefore, Ms. Hampton respectfully requests that this Court:

A. Grant a permanent injunction enjoining Ochsner its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against its employees on the basis of a disability.

B. Order Ochsner to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Ochsner to make whole Ms. Hampton, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay

D. Order Ochsner to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with the ADA, 42 U.S.C. § 2117 (a) and FMLA 29 U.S.C § 2615, which incorporates by reference Title VII, 42 U.S.C. § 2000e-8(e).

E. Enter a judgement pursuant to 29 U.S.C. 2617(a)(3) against the defendant and in favor of plaintiff for allowable liquidated damages.

F. Order Ochsner to make whole Ms. Hampton by providing compensation for past and future pecuniary loses resulting from the unlawful employment practices described above, including but not limited job-search and medical expenses, in amounts to be determined at trial.

G. Order Ochsner to make whole Ms. Hampton by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, and humiliation, in amounts to be determined at trial.

H. Order Ochsner to pay punitive damages for its malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

I. Grant such relief as the Court deems necessary and proper in the public interest.

J. Award attorney's fees.

Respectfully submitted,

**JACK & HARRISON, LLC.**

*/s/ Gerald J. Hampton, Jr.*

_____

**GERALD J. HAMPTON JR., #3516)**
**DAMION L. JACK, #36877**
**R. CHRISTOPHER HARRISON, #35809**
1010 Common Street, Suite 800
New Orleans LA 70112
Phone: 504-603-3222
Fax: 504-324-0983
Email: g.hampton@jackandharrisonlaw.com
*Attorneys for the Petitioner*